LOUISVILLE PROPERTY COMPANY, H. C. WILLIAMS, ASSIGNEE, MIDDLESBORO, KENTUCKY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 96414. Promulgated June 3, 1942.

*Geo. E. H. Goodner, Esq.,* for the petitioner.
*T. F. Callahan, Esq.,* and *F. M. Cavanaugh, Esq.,* for the respondent.

**OPINION.**

BLACK: We shall consider the questions in the order stated.

The respondent determined and contends that, under section 52 of the Revenue Acts of 1934 and 1936, Williams, as successor assignee of the Louisville Property Co., was operating the entire property or business of that corporation and should have made returns for the said corporation for the taxable years 1935 and 1936 in the same manner and form as corporations are required to make returns. The material provisions of section 52 of both acts are identical and are set forth in the margin.[1] In support of his determination and contention the respondent cites articles 22 (a)–21, 52–1, and 52–2 of Regulations 86 and 94 (the material provisions of which are identical in both Regu-

---

[1] SEC. 52. CORPORATION RETURNS.

* * * In cases where receivers, trustees in bankruptcy, or assignees are operating the property or business of corporations, such receivers, trustees, or assignees shall make returns for such corporations in the same manner and form as corporations are required to make returns. Any tax due on the basis of such returns made by receivers, trustees, or assignees shall be collected in the same manner as if collected from the corporations of whose business or property they have custody and control.

lations),[2] and the cases of *Will T. Caswell*, 36 B. T. A. 816; *Boggs-Burnam & Co.*, 26 B. T. A. 988; affirmed *per curiam*, 71 Fed. (2d) 999; and *Northwest Utilities Securities Corporation*, 27 B. T. A. 524; affd., 67 Fed. (2d) 619; certiorari denied, 291 U. S. 684.

Petitioner contends that Williams, as successor assignee of the Louisville Property Co., was not operating the property or business of that corporation; that he was merely a trustee appointed by the court to liquidate the property of the corporation for the sole benefit of, first, the creditors, and then the stockholders of the Louisville Property Co., and that, under sections 161 and 142 of the Revenue Acts of 1934 and 1936, Williams correctly filed returns as a fiduciary. The material provisions of these sections of both acts are identical and are in the margin.[3] In support of this contention petitioner cites *In re Owl Drug Co.*, 21 Fed. Supp. 907, as being similar in many respects to petitioner's position, and *Fidelity National Bank & Trust Co.*, 37 B. T. A. 473, and *Merchants National Building Corporation*, 45 B. T. A. 417, as two cases "on all fours with the instant case in all material respects."

We have carefully considered the contentions of both parties and are of the opinion that the respondent's determination as to this ques-

---

[2] ART. 22 (a)–21. *Gross income of corporation in liquidation.*—When a corporation is dissolved, its affairs are usually wound up by a receiver or trustees in dissolution. The corporate existence is continued for the purpose of liquidating the assets and paying the debts, and such receiver or trustees stand in the stead of the corporation for such purposes. * * * Any sales of property by them are to be treated as if made by the corporation for the purpose of ascertaining the gain or loss. No gain or loss is realized by a corporation from the mere distribution of its assets in kind in partial or complete liquidation, however they may have appreciated or depreciated in value since their acquisition. * * *

ART. 52–1. *Corporation returns.*—Every corporation not expressly exempt from tax must make a return of income, regardless of the amount of its net income. In the case of ordinary corporations, the return shall be on Form 1120. * * * A corporation having an existence during any portion of a taxable year is required to make a return. * * *

ART. 52–2. *Returns by receivers.*—Receivers, trustees in dissolution, trustees in bankruptcy, and assignees, operating the property or business of corporations, must make returns of income for such corporations. If a receiver has full custody of and control over the business or property of a corporation, he shall be deemed to be operating such business or property within the meaning of section 52, whether he is engaged in carrying on the business for which the corporation was organized or only in marshaling, selling, and disposing of its assets for purposes of liquidation. Notwithstanding that the powers and functions of a corporation are suspended and that the property and business are for the time being in the custody of the receiver, trustee, or assignee, subject to the order of the court, such receiver, trustee, or assignee stands in the place of the corporate officers and is required to perform all the duties and assume all the liabilities which would devolve upon the officers of the corporation were they in control. * * * A receiver in charge of only part of the property of a corporation, however, as, for example, a receiver in mortgage foreclosure proceedings involving merely a small portion of its property, need not make a return of income.

[3] SEC. 161. IMPOSITION OF TAX.

(a) APPLICATION OF TAX.—The taxes imposed by this title upon individuals shall apply to the income of estates or of any kind of property held in trust, including—

(1) Income accumulated in trust for the benefit of unborn or unascertained persons or persons with contingent interests, and income accumulated or held for future distribution under the terms of the will or trust;

* * * * * * *

(b) COMPUTATION AND PAYMENT.—The tax shall be computed upon the net income of the estate or trust, and shall be paid by the fiduciary * * *. For return made by beneficiary, see section 142.

tion is correct. We think the facts here are substantially different from the facts in *Merchants National Building Corporation, supra,* and that, instead of that case supporting the petitioner's view, it is authority for the respondent's determination for the reason that the Board took particular pains to point out that if the May 31, 1934, transfer there had been a step toward dissolution the decision would have been the other way. We think the *Merchants National Building Corporation* case is clearly distinguishable on its facts from the instant case.

Likewise we think *Fidelity National Bank & Trust Co., supra,* is distinguishable. The trustees in that case were merely liquidating trustees of a *part* only of the assets of the Fidelity National Bank & Trust Co. of Kansas City, which corporation under its own charter was consolidated with another bank into a consolidated bank. They were not trustees in dissolution. We do not regard the case as of any assistance to the petitioner here.

In *In re Owl Drug Co., supra,* the court held that the trustee in bankruptcy there, having in a prior year sold the entire business theretofore conducted by the bankrupt, was no longer "operating the property or business" of the bankrupt corporation, and was not, therefore, required to file a return as a corporation under section 52 of the Revenue Act of 1934. That is not the situation here.

In the instant proceedings we think the evidence clearly shows that Williams was "operating the property or business" of the Louisville Property Co. within the meaning of the applicable statute and regulations, and we have so found as an ultimate fact. He was deriving income from sales of coal and timber, collecting rents, and entering into royalty contracts, and he disposed of approximately 12,000 acres of land in Bell County, Kentucky, by sale to the United States Government, all of which is authorized by the corporation's charter. Furthermore, in the deed of assignment executed on November 6, 1919, it was recited among other things that the Louisville Property Co. was indebted to the Louisville & Nashville Railroad Co. in an amount of "considerably more than a million dollars" and that in consideration of the premises the assignor thereby assigned all of its property "to the assignee, its successors and assigns, absolutely and in fee simple, in trust for the payment of the debts of the Assignor and the expenses of administration and the distribution of the remainder, if any, of the proceeds of the sale of the assignor's property to its stockholders." There still remained a substantial amount of contested corporate debts at the time Williams was ap-

---

SEC. 142. FIDUCIARY RETURNS.

(a) REQUIREMENT OF RETURN.—Every fiduciary * * * shall make under oath a return for any of the following individuals, estates, or trusts for which he acts, stating specifically the items of gross income thereof and the deductions and credits allowed under this title * * *.

pointed successor assignee. That condition still exists, and up to the
date of this hearing there had been no distributions to the stock-
holders. Under such circumstances, Williams must be considered as
acting for the corporation and not the stockholders. *Boggs-Burnam
& Co., supra*, p. 994; *Will T. Casswell, supra*, p. 822. Cf. *Hellebush
v. Commissioner*, 65 Fed. (2d) 902, and cases there cited. We hold,
therefore, that Williams, as successor assignee in trust for the benefit
of the creditors and stockholders of the Louisville Property Co. in
dissolution, should have made returns for that corporation under
section 52 of the Revenue Acts of 1934 and 1936.

The second question involves petitioner's right to percentage de-
pletion for the taxable years 1935 and 1936 on coal mined from the
properties held by Williams as successor assignee. Petitioner con-
cedes that it is not entitled to depletion based on cost, for no cost
has been proved. Petitioner contends, however, it is entitled to a
deduction for each year of percentage depletion under section 114
(b) (4) of the Revenue Acts of 1934 and 1936, respectively. The ma-
terial provisions of this section, printed in the margin,[4] are identical
in both acts, with the exception that the last sentence printed therein
is new in the 1936 Act. The "first return" of this taxpayer referred
to in the statute is the return for the taxable year 1934, which should
have been filed by the United States Trust Co. as assignee. The
record is silent as to whether any return was filed for the year 1934,
and, if so, whether any election "to have the depletion allowance for
such property for the taxable year for which the return is made
computed with or without regard to percentage depletion" was or

[4] SEC. 114. BASIS FOR DEPRECIATION AND DEPLETION.

\* \* \* \* \* \* \*

(b) BASIS FOR DEPLETION.

\* \* \* \* \* \* \*

(4) PERCENTAGE DEPLETION FOR COAL AND METAL MINES AND SULPHUR.—The allowance
for depletion under section 23 (m) shall be, in the case of coal mines, 5 per centum \* \* \*
of the gross income from the property during the taxable year, excluding from such gross
income an amount equal to any rents or royalties paid or incurred by the taxpayer in
respect of the property. Such allowance shall not exceed 50 per centum of the net income
of the taxpayer (computed without allowance for depletion) from the property. A taxpayer
making his first return under this title in respect of a property shall state whether he
elects to have the depletion allowance for such property for the taxable year for which
the return is made computed with or without regard to percentage depletion, and the
depletion allowance in respect of such property for such year shall be computed according
to the election thus made. If the taxpayer fails to make such statement in the return, the
depletion allowance for such property for such year shall be computed without reference
to percentage depletion. The method, determined as above, of computing the depletion
allowance shall be applied in the case of the property for all taxable years in which it is
in the hands of such taxpayer, or of any other person if the basis of the property (for
determining gain) in his hands is, under section 113, determined by reference to the basis
in the hands of such taxpayer, either directly or through one or more substituted bases,
as defined in that section. The above right of election shall be subject to the qualification
that this paragraph shall, for the purpose of determining whether the method of computing
the depletion allowance follows the property, be considered a continuation of section
114 (b) (4) of the Revenue Act of 1934, and as giving no new election in cases where
such section would, if applied, give no new election.

was not made.  Without proof of what was done relative to the taxable year 1934, the Board is not permitted to allow any deduction for percentage depletion for the taxable years 1935 and 1936.  *J. E. Riley Investment Co.* v. *Commissioner*, 311 U. S. 55.  Cf. last sentence of section 114 (b) (4) of the Revenue Act of 1936, *supra*, and *Tonopah Mining Co. of Nevada* v. *Commissioner*, 127 Fed. (2d) 239.

The third question is whether the taxes paid in the name of H. C. Williams, assignee, Louisville Property Co., for the years 1935 and 1936 should be credited against the taxes determined by the respondent in this proceeding.  Petitioner contends that if it is held that it should be taxed as a corporation and not as a trust, "then it is certainly entitled to have the taxes paid deducted from the tax liability for the two years before any deficiency can be determined."  In support of this contention petitioner cites section 271 of the Revenue Acts of 1934 and 1936.[5]  This section is identical in both acts.

It is, of course, fundamental that taxes overpaid by one taxpayer may not be credited against taxes due from a different taxpayer.  *Alexander Vayssie*, 8 B. T. A. 587; *Charles V. Parker*, 17 B. T. A. 608; *Robert C. Roebling*, 28 B. T. A. 644, 656; *Estate of Lucile Gruy*, 42 B. T. A. 1279; *Philadelphia Rapid Transit Co.* v. *United States*, 10 Fed. Supp. 591; certiorari denied, 300 U. S. 664; Paul and Mertens, vol. 5, par. 51.33.

The respondent argues that "petitioner overlooks the simple fact that H. C. Williams individually is not the same taxpayer as the Louisville Property Company, H. C. Williams, Assignee" and cites *Estate of Lucile Gruy, supra*, as authority for denying the credit.

We do not agree with the respondent that, when Williams filed the income tax returns on Form 1040 mentioned in our findings in the name of H. C. Williams, assignee, Louisville Property Co., he was acting for himself individually.  Those were clearly not his individual returns, but were the returns he thought he was required to file as successor assignee of the Louisville Property Co.  In those returns he did not report any of his individual income but only the income he derived from operating the property or business of the Louisville Property Co.  Clearly the Commissioner in his deficiency notice

---

[5] SEC. 271.  DEFINITION OF DEFICIENCY.

As used in this title in respect of a tax imposed by this title "deficiency" means—

(a) The amount by which the tax imposed by this title exceeds the amount shown as the tax by the taxpayer upon his return ; but the amount so shown on the return shall first be increased by the amounts previously assessed (or collected without assessment) as a deficiency, and decreased by the amounts previously abated, credited, refunded, or otherwise repaid in respect of such tax ; or

(b) If no amount is shown as the tax by the taxpayer upon his return, or if no return is made by the taxpayer, then the amount by which the tax exceeds the amounts previously assessed (or collected without assessment) as a deficiency ; but such amounts previously assessed, or collected without assessment, shall first be decreased by the amounts previously abated, credited, refunded, or otherwise repaid in respect of such tax.

recognized that he was dealing with the same taxpayer and simply determined that Williams as successor assignee should have filed returns as a corporation and not as a trust, and we have sustained that determination. We do not think the deficiencies in question have been determined against any different "taxpayer" from the one who filed the returns mentioned in our findings and paid the taxes shown to be due thereon. The party that filed those returns and paid the taxes was simply mistaken as to the proper form to use. We hold that the respondent erred in not giving petitioner credit for the taxes paid for the years 1935 and 1936 in the respective amounts of $23.14 and $614.11, to the extent that such payments have not been refunded or otherwise credited. Cf. *John W. Preston*, 21 B. T. A. 840, 849.

In view of our holding on the first question it becomes unnecessary to consider the fourth question.

*Decision will be entered under Rule 50.*